IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARIEOLIVER LLC,<br><br>Plaintiff,<br><br>v.<br><br>REBECCA ZWANZIG,<br><br>Defendant. | 1:25-CV-227-DAB-JEP |

## MEMORANDUM OPINION AND ORDER

Defendant Rebecca Zwanzig, an Oregon resident, sent cease-and-desist letters asserting copyright infringement to Plaintiff MarieOliver LLC, a North Carolina apparel company, and to three retailers located outside North Carolina. MarieOliver responded by filing this action seeking a declaratory judgment of noninfringement and asserting a claim for tortious interference. Ms. Zwanzig moves to dismiss for lack of personal jurisdiction and improper venue. For the following reasons, the Court grants the motion and dismisses this action without prejudice.

### FACTUAL BACKGROUND[1]

Ms. Zwanzig is an independent illustrator and freelance designer who resides in Oregon and has never lived in North Carolina. (*May 22, 2025 Declaration of Rebecca Zwanzig* (D.E. 14-4) ¶¶ 2, 22, 26.) She sells and licenses her artwork through High West Wild LLC, a Nevada limited liability company. (*Id.* ¶¶ 5, 25; *Nevada LLC Record* (D.E. 14-3) pp. 2–3.) High West Wild operates a publicly

---

[1] In resolving a personal jurisdiction challenge, the Court may consider materials outside the pleadings, including "the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). For purposes of this motion, all allegations and evidence are construed in the light most favorable to MarieOliver. *Id.*

accessible website through which customers nationwide and abroad may purchase Ms. Zwanzig's artwork, primarily in one-off transactions. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶¶ 6, 33.) Ms. Zwanzig also promotes her illustrations on High West Wild's public Instagram and Pinterest accounts. (*Id.* ¶ 7.) The record contains no allegations or evidence that she solicits business in North Carolina, targets the forum through advertising or other directed activity, maintains offices or employees in the state, has any physical presence there, or traveled to the state in connection with the conduct at issue. (*Id.* ¶¶ 26, 33, 36–39.)

MarieOliver, in turn, is a North Carolina fashion brand that designs vibrantly colored, artisanal clothing from its headquarters in North Carolina. (*Complaint* (D.E. 1) ¶ 6; *Declaration of Peter O. Evenson, Jr.* (D.E. 16-1) ¶¶ 5, 7, 9–10.) MarieOliver's garments are manufactured internationally and shipped to a warehouse in North Carolina, where they are stored until sold. (*Evenson Decl.* (D.E. 16-1) ¶ 11.) MarieOliver sells its clothing both directly to consumers and to retailers nationwide, including Saks Fifth Avenue, Neiman Marcus, and Rent-the-Runway. (*Id.* ¶¶ 12, 14.)

Ms. Zwanzig is the sole owner and copyright claimant of two illustrations: *Jermaine* and *Olympic Mountain Birds*. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶ 4.) She has not contracted with or licensed her artwork to MarieOliver. (*Id.* ¶¶ 28, 34.) From January 1, 2020, through the filing of this action, Ms. Zwanzig made 45 sales to North Carolina customers through her website. (*Response Brief* (D.E. 16) p. 16; *Reply Brief* (D.E. 18) p. 4; *Zwanzig Jurisdictional Discovery Responses* (D.E. 16-3) p. 11.) Before the events giving rise to this litigation, Ms. Zwanzig had no business relationship with MarieOliver. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶ 40.)

Around June 2023, MarieOliver bought the exclusive rights to use a design identified as "Design 23M1059" from Hartek Design Sagl, a Switzerland-based design house. (*Compl.* (D.E. 1) ¶¶ 7, 9; *see Deed of Assignment* (D.E. 1-2) p. 2.) MarieOliver thereafter incorporated that design into certain items of clothing. (*Compl.* (D.E. 1) ¶ 10.)

Ms. Zwanzig became concerned that MarieOliver's use of Design 23M1059 infringed her copyrights in *Jermaine* and *Olympic Mountain Birds*. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶ 8.) After she had her Pennsylvania-based attorney buy a purportedly infringing clothing item from MarieOliver (*Declaration of Alyssa M. Bruno* (D.E. 16-12) ¶ 24), Ms. Zwanzig's counsel sent a cease-and-desist letter to MarieOliver's headquarters on February 5, 2025. (*Compl.* (D.E. 1) ¶ 12.) This letter asserted copyright infringement, threatened litigation, and demanded that MarieOliver preserve potentially relevant documents. (*February 5, 2025 Cease-and-Desist Letter to MarieOliver* (D.E. 1-5) pp. 2–4.)

That same day, Ms. Zwanzig's counsel sent similar cease-and-desist letters from Pennsylvania to MarieOliver's retailers—Saks Fifth Avenue, Neiman Marcus, and Rent-the-Runway—at their registered office addresses in Massachusetts, Texas, and Delaware, respectively. (*See Cease-and-Desist Letter to Rent-the-Runway* (D.E. 16-13) pp. 4–6; *Cease-and-Desist Letter to Neiman Marcus* (D.E. 16-13) pp. 50–52; *Cease-and-Desist Letter to Saks Fifth Avenue* (D.E. 16-13) pp. 77–79.) Like the letter sent to MarieOliver, these letters asserted copyright infringement, threatened litigation, and requested preservation of documents. (*Id.*) The retailers later informed Ms. Zwanzig that they had received the letters and had ceased selling the allegedly infringing clothing items. (*Bruno Decl.* (D.E. 16-12) ¶¶ 9–10.) There are no allegations or evidence that Ms. Zwanzig sent cease-and-desist letters to retailers located in North Carolina or that the retailers' decisions to cease sales resulted from any automatic effect or mandatory takedown mechanism triggered by the letters.

Following this initial round of cease-and-desist communications, Ms. Zwanzig and MarieOliver engaged in settlement discussions. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶ 17.) Those conversations proved unsuccessful after MarieOliver began selling another allegedly infringing clothing item. (*Id.* ¶¶ 17–18.) In response, Ms. Zwanzig's counsel sent an additional email to MarieOliver's counsel demanding that MarieOliver cease all future production, sale, display, and distribution of the new item. (*Id.* ¶ 18.) On March 19, 2025, Ms. Zwanzig's counsel sent a further cease-and-desist letter to MarieOliver's counsel reiterating those demands—the third such enforcement communication directed to MarieOliver. (*Id.* ¶ 19.) Other than these cease-and-desist communications, there are no allegations or evidence that Ms. Zwanzig directed any further enforcement communications into North Carolina.

Two days later, MarieOliver initiated this action, seeking a declaratory judgment of noninfringement and asserting a claim for tortious interference with customer relationships based on the February 2025 letters sent to the third-party retailers. (*See Compl.* (D.E. 1).) On May 19, 2025, Ms. Zwanzig filed a copyright infringement action in the Eastern District of Pennsylvania against MarieOliver and the retailers, arising from substantially the same alleged infringement. (*See Zwanzig v. MarieOliver LLC*, No. 25-cv-2485 (E.D. Pa. 2025).) That action remains pending.

Ms. Zwanzig now moves to dismiss this lawsuit for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and (b)(3). (*Motion to Dismiss* (D.E. 13).) The parties have fully briefed the motion and submitted declarations, exhibits, and other evidence. For the reasons discussed below, the Court grants the motion and dismisses this case without prejudice.

3

## LEGAL STANDARD

Rule 12(b)(2) governs personal jurisdiction challenges. A defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). Where, as here, the Court resolves "the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268. In making this determination, "the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.*

Rule 12(b)(3) governs challenges to venue. To withstand a venue objection raised in a motion to dismiss, a plaintiff need "make only a prima facie showing of proper venue." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). Courts may "consider evidence outside the pleadings" but must "view the facts in the light most favorable to the plaintiff." *Id.*

## ANALYSIS

The issues here concern whether an out-of-state copyright holder subjects herself to personal jurisdiction, and thus proper venue, in the alleged infringer's home forum based on generally accessible internet sales, an isolated purchase of an allegedly infringing item, and cease-and-desist letters sent to the plaintiff and third parties. As discussed below, the Court concludes that these contacts, whether viewed individually or collectively, are insufficient.

Courts may exercise personal jurisdiction over a defendant if (1) "such jurisdiction is authorized by the long-arm statute of the state in which it sits" and (2) "the application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025) (quoting *UMG Recordings*, 963 F.3d at 350). North Carolina's long-arm statute "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Univ. Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Thus, the "two-prong test merges into the single question whether" MarieOliver has made a prima facie showing that Ms. Zwanzig had sufficient contacts with North Carolina to satisfy constitutional due process. *Id.* at 559.

The Constitution permits two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 262 (2017). General jurisdiction requires a defendant to have "'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). MarieOliver does not assert this jurisdictional basis here.

Specific jurisdiction, which MarieOliver does assert, requires the defendant to have "minimum contacts" with the forum "such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Khashoggi*, 138 F.4th at 159 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)). The inquiry involves a three-pronged test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* (quoting *UMG Recordings*, 963 F.3d at 352). This analysis is not "mechanical," and a court must weigh "the totality of the facts before" it. *Perdue Foods*, 814 F.3d at 189 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) and *Univ. Leather*, 773 F.3d at 561, respectively).

To make a prima facie showing of specific jurisdiction, MarieOliver relies on three asserted contacts: (1) Ms. Zwanzig's generally accessible websites and associated sales in North Carolina; (2) her isolated purchase of a clothing item from MarieOliver; and (3) her cease-and-desist letters sent to MarieOliver and to the third-party retailers located outside North Carolina. (*See Resp. Br.* (D.E. 16) pp. 10–16.) As explained below, none of these contacts—whether viewed individually or collectively—suffice for specific jurisdiction.

## I. Ms. Zwanzig's generally accessible websites and associated online sales do not constitute purposeful availment or give rise to MarieOliver's claims.

The Court begins with Ms. Zwanzig's websites and related sales activity. In the internet context, the purposeful availment inquiry asks whether the defendant: "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142 (4th Cir. 2020) (quoting *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)). MarieOliver satisfies none of these requirements.

5

Turning to the threshold questions of direction and manifest intent, it is undisputed that Ms. Zwanzig's website and social-media accounts are accessible nationwide and abroad. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶¶ 6–7, 33.) But "the mere fact that the website is accessible in a given state does not mean that [the defendant] is targeting [her] activities at that state." *Fidrych*, 952 F.3d at 141. While Ms. Zwanzig's website permits forum residents to make online purchases—just as residents anywhere could (*see 5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶¶ 6, 33)—this alone is not enough. *See Fidrych*, 952 F.3d at 142–43 (holding that a drop-down menu listing the forum state alongside every other state showed defendant's willingness to transact with forum residents, but did not show purposeful targeting of them); *ESAB Grp., Inc. v. Centricut*, 126 F.3d 617, 625–26 (4th Cir. 1997) (holding that sales activity focusing "generally on customers located throughout the United States and Canada" does not establish purposeful availment of a particular forum). Instead, the defendant must have "targeted" the forum's "residents in particular." *Fidrych*, 952 F.3d at 143.

MarieOliver points to no facts demonstrating such forum-specific targeting. There are no allegations or evidence of forum-specific advertising, North Carolina-focused promotions or discounts, targeted marketing, outreach to North Carolina retailers or consumers beyond ordinary order fulfillment, or any other indications that Ms. Zwanzig tailored her website, social-media, or sales practices to appeal specifically to North Carolina residents.

The record only underscores this absence of targeting. Since 2020, Ms. Zwanzig has made only 45 direct-to-consumer sales to North Carolina customers, primarily in isolated, one-off transactions. (*5/22/25 Zwanzig Decl.* (D.E. 14-4) ¶ 33; *Resp. Br.* (D.E. 16) p. 16; *Zwanzig Discovery Responses* (D.E. 16-3) p. 11; *Reply Br.* (D.E. 18) p. 4.) Such sporadic sales do not create the kind of ongoing, back-and-forth relationship with the forum that supports purposeful availment. *See Fidrych*, 952 F.3d at 142 (explaining that a website used merely to facilitate "one-off" transactions does not establish purposeful direction). These sales represent only a fraction of Ms. Zwanzig's broadly dispersed business. Indeed, North Carolina appeared among the top five states by revenue only once since 2020—and then only marginally, ranking fifth in 2021.[2] (*Zwanzig Discovery Responses* (D.E. 16-3) pp.

---

[2] MarieOliver emphasizes that for sales of *Mountain Bird*, North Carolina ranked first for sales in 2021, fourth in 2022, and second in 2023. (*See Resp. Br.* (D.E. 16) p. 16.) But the jurisdictional inquiry turns on whether the defendant targeted the forum, not on whether a product happened to generate some sales there. *See Fidrych*, 952 F.3d at 142. Even so, only five prints of *Mountain Bird* were sold to North Carolinians from 2020 through the present. (*July 14, 2025 Declaration of Rebecca*

6–7.) These facts highlight that Ms. Zwanzig did not direct her online activities toward North Carolinians in particular, but instead made her products generally available to consumers nationwide.

MarieOliver stresses that Ms. Zwanzig's websites are interactive. (*Resp. Br.* (D.E. 16) p. 15.) Although interactivity is "a jurisdictionally relevant fact," *Fidrych*, 952 F.3d at 141, it is not dispositive. *See UMG Recordings*, 963 F.3d at 353 (noting that the degree of interactivity "is not determinative" of personal jurisdiction). In today's digital environment, "'[i]t is an extraordinarily rare website' that is not interactive at some level." *Fidrych*, 952 F.3d at 141 n.5 (quoting *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1174 (D. Utah 2016)). Regardless of interactivity, "the touchstone remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state" that creates "a substantial connection with the forum state." *UMG Recordings*, 963 F.3d at 353 (quoting *ESAB Grp., Inc.*, 126 F.3d at 625). Here, even assuming the websites are interactive, nothing in the record indicates they were designed or operated to target North Carolina residents specifically.

Because the first two prongs of the internet purposeful availment test are not met, the Court need not address the third. *See ALS Scan*, 293 F.3d at 715. That said, even if MarieOliver established purposeful forum-directed electronic activity, it would still fail the third requirement because Ms. Zwanzig's internet activity and corresponding sales did not "create" the claims asserted here. *Id.* at 714. The nature of MarieOliver's declaratory judgment claim seeks "to clear the air of infringement charges," *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (citation omitted), rather than to redress any injury arising from ordinary online sales. Likewise, its tortious interference claim turns on Ms. Zwanzig's alleged enforcement communications to third parties, *see United Lab'ys, Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988), not on her unrelated ecommerce activity.

For these reasons, Ms. Zwanzig's internet presence and limited sales to North Carolinians do not establish specific jurisdiction.

## II. Ms. Zwanzig's isolated purchase of a clothing item does not give rise to MarieOliver's claims.

The Court next addresses—and rejects—MarieOliver's reliance on Ms. Zwanzig's isolated purchase of a single clothing item. Even assuming this purchase

---

*Zwanzig* (D.E. 18-1) ¶ 5.) MarieOliver otherwise identifies no evidence that *Mountain Bird* was marketed differently in North Carolina or promoted to North Carolina customers. This does not pass muster for purposeful availment.

7

constitutes purposeful availment, the second prong of the specific jurisdiction analysis requires that the plaintiff's claims "arise out of" the defendant's forum-directed conduct. *Khashoggi*, 138 F.4th at 159 (citation omitted). This prong "requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs Corp.*, 561 F.3d at 278–79. Here, as outlined previously, Ms. Zwanzig's cease-and-desist letters to MarieOliver and the third-party retailers gave rise to MarieOliver's claims, not her purchase of a product through MarieOliver's website. *See Avocent*, 552 F.3d at 1332. Accordingly, this isolated purchase does not support specific jurisdiction.

### III. Ms. Zwanzig's cease-and-desist letters do not provide a constitutionally sufficient basis for specific jurisdiction.

Finally, the Court turns to MarieOliver's last set of identified contacts: Ms. Zwanzig's cease-and-desist letters to MarieOliver and to the out-of-forum retailers. Even assuming these letters satisfy the purposeful availment and relatedness prongs for specific jurisdiction, the Court holds that exercising specific jurisdiction here would be constitutionally unreasonable.

The Fourth Circuit has not addressed whether cease-and-desist letters alone suffice to establish specific jurisdiction in a declaratory judgment action alleging noninfringement. Other circuits, however, have concluded that a defendant may purposefully direct activity toward a forum by sending a cease-and-desist letter to a resident of that forum, and that a subsequent declaratory-judgment action may "arise out of" that conduct. *New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037–38 (Fed. Cir. 2017); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1081–82 (10th Cir. 2008) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)). The Court therefore assumes, without deciding, that Ms. Zwanzig purposefully availed herself of the forum by sending a cease-and-desist letter to MarieOliver and that MarieOliver's declaratory judgment claim arises out of that contact.

That assumption does not end the inquiry, as the exercise of jurisdiction must still be constitutionally reasonable. *Khashoggi*, 138 F.4th at 159. This final prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 135 (4th Cir. 2023) (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 279). In evaluating reasonableness, courts may consider "factors such as the burden on the defendant, the court's ability to conveniently and efficiently resolve the dispute, the interest of the forum state in adjudicating the dispute, the plaintiff's interest in

8

obtaining effective relief, and the interests of the state in furthering substantive policies." *Id.*

Applying these factors here, Ms. Zwanzig is an Oregon resident who would face a heavy burden litigating in North Carolina. *See Kulko v. Superior Court of Calif.*, 436 U.S. 84, 97–98 (1978) (recognizing the burden on a nonresident individual who must defend a suit thousands of miles from home). There are also strong policy reasons for declining specific jurisdiction based on cease-and-desist communications. Such letters are "normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc). "If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter." *Id.*

That said, advances in transportation and technology have reduced the burdens associated with interstate litigation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). And North Carolina "has a valid interest in the resolution of the grievances of its citizens and businesses." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 297 (4th Cir. 2009).

Balancing these same considerations, courts have overwhelmingly declined to exercise specific jurisdiction over an out-of-state defendant based on cease-and-desist communications and related settlement negotiations with an in-forum plaintiff alone. *See, e.g.*, *Avocent*, 552 F.3d at 1333; *Yahoo!*, 433 F.3d at 1208; *Woods Int'l v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006). This Court will not depart from that well-established authority. At the same time, courts recognize that when a defendant engages in "more" than mere cease-and-desist communications—such as by initiating "extra-judicial" intellectual property enforcement within the forum—the jurisdictional balance may tip in favor of exercising specific jurisdiction. *Avocent*, 552 F.3d at 1332, 1340 (quoting *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006)). Although MarieOliver contends that Ms. Zwanzig conducted this "extra-judicial" enforcement by sending cease-and-desist communications to the out-of-forum retailers, this Court disagrees.

In assessing whether cease-and-desist communications sent to out-of-state third parties supply a constitutionally reasonable basis for personal jurisdiction, courts have emphasized the *effect* of the communication. *See SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371, 1375–76 (Fed. Cir. 2024) (synthesizing relevant caselaw). Specifically, if the communication triggers an automatic and unavoidable

9

consequence for the forum plaintiff—like an automatic takedown or suspension—circuits have found jurisdiction appropriate. *See, e.g.*, *Dudnikov*, 514 F.3d at 1082; *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1089 (9th Cir. 2000), *overruled in part on other grounds by Yahoo!*, 433 F.3d at 1207 (en banc). By contrast, where the communication leaves any downstream effect on the forum plaintiff to the independent discretion of third parties, courts have declined to exercise jurisdiction. *See, e.g.*, *Avocent*, 552 F.3d at 1340.

In *Dudnikov*, for example, an in-forum plaintiff planned an eBay artwork auction. 514 F.3d at 1067. The nonresident defendant, believing the artwork infringed on its copyrights, emailed the plaintiffs a litigation threat and separately submitted a notice of claimed infringement to eBay, which was located outside the forum. *Id.* at 1067–69. Under eBay's policies and procedures, that notice automatically terminated the plaintiffs' in-forum auction. *Id.* at 1068, 1075. The Tenth Circuit concluded the exercise of specific jurisdiction was reasonable, emphasizing that although the notice was sent to an out-of-forum third-party, its "express aim" and immediate effect was to halt the Colorado-based auction. *Id.* at 1075.

The Ninth Circuit's *Bancroft* opinion is similar. There, the in-forum plaintiff registered a website domain name with an out-of-state third-party. 223 F.3d at 1084. The nonresident defendant, believing the domain name infringed on its trademark, sent a cease-and-desist communication to the plaintiff along with a letter to the third-party challenging the plaintiff's use of the domain name. *Id.* at 1085. That letter triggered the third-party's dispute resolution policy, which immediately and automatically constrained the plaintiff's use of its domain name unless it surrendered the domain or filed suit. *Id.* As in *Dudnikov*, the court concluded that the exercise of specific jurisdiction was proper. *Id.* at 1089.

*Avocent* illustrates the opposite circumstance. There, an out-of-forum patentee sent an infringement letter to an out-of-forum third-party concerning products sold by the in-forum plaintiff. 552 F.3d at 1327. Those communications did not invoke any third-party enforcement mechanism that produced automatic or self-executing consequences in the forum. *See SnapPower*, 100 F.4th at 1376. Thus, the court held that exercising specific jurisdiction would be constitutionally unreasonable. *Avocent*, 552 F.3d at 1340–41. As the Federal Circuit has emphasized, the absence of an automatic effect was the key distinction: unlike *Dudnikov* and *Bancroft*, the third-party letters in *Avocent* "did not have any automatic effect," and it is precisely such an "automatic takedown process" that constitutes the "more" contemplated by *Avocent*. *SnapPower*, 100 F.4th at 1376.

10

This distinction is constitutionally sound. The personal jurisdiction inquiry focuses on contacts the defendant herself creates with the forum state, not contacts arising from third parties. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014). When a rights holder affirmatively invokes a third-party enforcement mechanism that operates automatically, as in *Dudnikov* and *Bancroft*, the resulting forum-based consequences flow directly from the defendant's own conduct, making the exercise of jurisdiction reasonable. By contrast, when a rights holder merely asserts intellectual property rights or threatens future litigation, as in *Avocent*, any downstream forum effects depend entirely on the independent choices of third parties. Exercising jurisdiction on that basis would be unreasonable.

Here, MarieOliver neither alleges nor offers evidence that Ms. Zwanzig's cease-and-desist letters to the third-party retailers triggered any automatic, self-executing, or legally compelled consequences. Absent such evidence, MarieOliver has not made a prima facie showing that any asserted effects in North Carolina flowed directly from Ms. Zwanzig's own conduct rather than from subsequent decisions by non-forum third parties. On this record, the exercise of specific jurisdiction would be constitutionally unreasonable. This remains true even when these cease-and-desist communications are considered alongside the other asserted contacts, each of which independently fails to establish suit-related, forum-directed conduct.[3]

MarieOliver's reliance on *Calder v. Jones*, 465 U.S. 783 (1984), does not alter this analysis. (*See Resp. Br.* (D.E. 16) p. 10.) Although *Calder* recognizes that "in-forum effects of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction," *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019), it does not transform every out-of-forum act with downstream forum consequences into a constitutionally sufficient contact. The exercise of jurisdiction must still comport with "traditional notions of fair play and substantial justice." *Calder*, 465 U.S. at 788 (citation omitted). Consistent with that requirement, appellate authorities addressing third-party cease-and-desist communications have interpreted *Calder* to justify jurisdiction when the defendant's conduct triggers an automatic, self-executing consequence in the forum.

---

[3] This conclusion aligns with this District's prior authority. *See Woods*, 436 F. Supp. 2d at 751 (holding that a foreign defendant's cease-and-desist letter to an in-forum plaintiff, coupled with a cease-and-desist letter to an out-of-forum customer, are insufficient by themselves for personal jurisdiction).

11

Where, as here, the asserted forum effects depend on the independent discretion of third parties, *Calder* does not supply a basis for jurisdiction.[4]

In sum, MarieOliver has not made a prima facie showing of personal jurisdiction.[5]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Ms. Zwanzig's Motion to Dismiss for lack of personal jurisdiction and improper venue. (*See Motion to Dismiss* (D.E. 13).) Because the Court lacks personal jurisdiction over Ms. Zwanzig, the case is DISMISSED without prejudice. *See al-Suyid v. Hifter*, 139 F.4th 368, 378 (4th Cir. 2025).[6]

This the 10th day of February, 2026.

                                          */s/ David A. Bragdon*
                                          United States District Judge

---

[4] MarieOliver's reliance on various district court opinions are likewise unavailing. None of them cited or applied *Avocent*, and all predate the Federal Circuit's clarification of the relevant caselaw in *SnapPower*. *See Sunny Days Entertainment, LLC v. Traxxas, L.P.*, 376 F. Supp. 3d 654 (D.S.C. 2019); *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428 (D. Md. 2018); *Marx Industries, Inc. v. Chestnut Ridge Foam, Inc.*, 903 F. Supp. 2d 358 (W.D.N.C. 2012). Further, *Under Armour* ultimately dismissed the action for lack of personal jurisdiction after conducting an evidentiary hearing. *See Under Armour, Inc. v. Battle Fashions, Inc.*, No. RDB-17-3223, 2019 WL 3239001, at *8 (D. Md. July 18, 2019).

[5] Because the Court lacks personal jurisdiction over Ms. Zwanzig, it need not separately analyze venue. In any event, "the only basis for challenging venue in copyright actions is that the absence of personal jurisdiction in a forum renders venue improper," such that "the question of venue is essentially swallowed by the jurisdictional analysis." *Dudnikov*, 514 F.3d at 1069 n.2. Accordingly, because Ms. Zwanzig is not subject to personal jurisdiction in this District, venue is likewise improper.

[6] In her reply brief, Ms. Zwanzig also moves to dismiss, or alternatively stay, this case in favor of the action in the Eastern District of Pennsylvania. (*See Reply Br.* (D.E. 18) pp. 11–12.) Such motions made in a reply brief violate Local Rule 7.3(a) and ordinarily will not be considered. *See Newman v. Am. Honda Fin. Corp.*, No. 1:21CV3, 2022 WL 657630, at *5 (M.D.N.C. Mar. 4, 2022). In any event, because the Court dismisses this action for lack of personal jurisdiction, Ms. Zwanzig's request for a stay is moot, and the Court does not address it.